**Steve D. Larson,** OSB No. 863540
Email: slarson@stollberne.com
**Nadine A. Gartner**, OSB No. 103864
Email: ngartner@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**E. Michelle Drake** (*to be admitted Pro Hac Vice*)
Email: drake@nka.com
**Daniel C. Bryden** (*to be admitted Pro Hac Vice*)
Email: dbryden@nka.com
NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

**Attorneys for Plaintiff**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **STEPHANIE MYERS**, individually and as a representative of the Classes,<br><br>Plaintiff,<br><br>v.<br><br>**NATIONAL TENANT NETWORK, INC.**, an Oregon corporation,<br><br>Defendant. | Case No. 3:14-cv-00327<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>Violations of the Fair Credit Reporting Act (15 U.S.C. § 1681, *et seq*.)<br><br>**DEMAND FOR JURY TRIAL** |

Stephanie Myers ("Myers" or "Plaintiff"), on behalf of herself and the Classes set forth below, and in the public interest, brings this Class Action Complaint against National Tenant Network, Inc. ("NTN" or "Defendant"), and alleges as follows:

## <u>INTRODUCTION</u>

1.      This is a case about NTN willfully ignoring both the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and Texas law governing consumer reporting agencies, Tex. Bus. & Com. Code § 20.01, *et seq.* ("TCRA").

2.      Specifically, NTN has failed to abide by (1) the FCRA and TCRA's explicit prohibition on including adverse information that is older than seven years in its consumer reports; (2) the FCRA and TCRA's requirements that NTN maintain reasonable procedures to ensure maximum possible accuracy of information included in its consumer reports; and (3) the requirements of the FCRA and the TCRA regarding the content of disclosures that must be made to consumers who request copies of their files.

3.      The FCRA was enacted based on Congress's finding that there is a "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).

4.      Based on that finding, the FCRA imposes certain obligations on consumer reporting agencies which are designed to prevent consumer reporting agencies from including incomplete, inaccurate, or old information in consumer reports.  *See* 15 U.S.C. § 1681c(a)(5) (prohibiting inclusion of "any other adverse item of information, other than records of convictions of crimes, which antedates the report by more than seven years"); 15 U.S.C. § 1681e(b) (requiring consumer reporting agencies to "follow reasonable procedures to ensure maximum possible accuracy").

Page | 1 – CLASS ACTION ALLEGATION COMPLAINT

5.      As an additional form of consumer protection, the FCRA also requires consumer reporting agencies to disclose all information in a consumer's file to the consumer upon request. 15 U.S.C. § 1681g(a)(1). The FCRA further requires that when a consumer reporting agency provides this required disclosure, it includes specific information regarding the legal rights of the consumer. *See* 15 U.S.C. § 1681g(c)(2)(A) (requiring the summary of rights prepared by the Consumer Financial Protection Bureau to be provided to the consumer at the same time that a written disclosure of the consumer's file is provided to the consumer).

6.      The TCRA has provisions which impose parallel obligations to those imposed by the FCRA, and which provide for cumulative damages. *See* Tex. Bus. & Com. Code § 20.05(4) (prohibiting the inclusion of "a record of arrest, indictment, or conviction of a crime in which the date of disposition, release, or parole predates the consumer report by more than seven years" in a consumer report); Tex. Bus. & Com. Code § 20.03 (requiring consumer reporting agencies to disclose all contents of a consumer file upon request and to provide "a set of instructions describing how information is presented" that is "clear accurate and understandable" as well as seven other specific items of information); Tex. Bus. & Com. Code § 20.09 (providing for cumulative remedies and civil liability for triple damages or statutory damages in the amount of $1,000 per violation for willful violations and $500 per violation for negligent violations).

7.      Despite its long history of operating as a consumer reporting agency, and the fact that it is well aware of its legal obligations under both federal and state law, NTN places its business interests ahead of the legal rights of the consumers about whom it issues reports.

8.      NTN willfully disregards consumers' rights pursuant to the FCRA and the TCRA, choosing instead to report inaccurate and outdated information, and failing to comply with legal requirements regarding the contents of consumer file disclosures.

Page | 2 – CLASS ACTION ALLEGATION COMPLAINT

9.    Specifically, NTN violates the FCRA and the TCRA in three primary ways.

10.    *First,* NTN includes adverse information older than seven years in its reports. Specifically, NTN reports records of arrest, indictment, or conviction of a crime in which the date of disposition, release, or parole predates the consumer report by more than seven years.

11.    *Second*, NTN fails to maintain reasonable procedures to ensure the maximum possible accuracy of the information included in its reports.  Specifically, NTN reports the same adverse items of criminal information multiple times in the same report, making it appear as though the subject of the report has had more criminal charges than they have in fact had.

12.    Duplicative reporting is a well-established FCRA violation.  The FTC has prosecuted consumer reporting agencies under the FCRA for failing "to follow reasonable procedures to prevent the inclusion of multiple entries for the same criminal offense in the same report."  *See Exhibit 1.*  The FTC's efforts in this regard were well publicized and led to the FTC's then second largest settlement ever with a consumer reporting agency.  *See Exhibit 2.*

13.    In addition to engaging in duplicative reporting, NTN also includes information in its reports about persons other than the subject of the report, basing the information in its report merely on partial name matches, even when the name of the individual who is supposed to be the subject of the report differs obviously from the person to whom the reported information relates.

14.    NTN does not obtain actual court records or otherwise attempt to resolve whether the information in its reports actually pertains to the subjects of the reports, even though such records are available.  Instead, NTN misleadingly represents that the relevant records are filed "by name only" and that it is therefore "impossible" to be certain whether the indicated filings pertain to the individual who is the subject of a given report.

Page | 3 – CLASS ACTION ALLEGATION COMPLAINT

15.    *Third,* in providing responsive disclosures in response to consumer requests for their files, NTN fails to include required information.  Specifically, NTN does not provide:

a.   a copy of the summary of rights that it is required to be provided by the FCRA, 15 U.S.C. 1681g(c)(2)(A);

b.   a "set of instructions describing how information is presented on the consumer reporting agency's written disclosure of the consumer file," as required by Tex. Bus. & Com. Code § 20.03(a)(2);

c.   a written statement that explains in clear and simple language the consumer's rights under the TCRA and which includes:

(1) the process for receiving a consumer report or consumer file;

(2) the process for requesting or removing a security alert or freeze;

(3) the toll-free telephone number for requesting a security alert;

(4) applicable fees;

(5) dispute procedures;

(6) the process for correcting a consumer file or report; and

(7) information on a consumer's right to bring an action in court or arbitrate a dispute, as required by Tex. Bus. & Com. Code § 20.03(d).

16.    Each of the above outlined practices benefits NTN.

17.    Including inaccurate, old and duplicative information in consumer reports allows NTN to avoid the costs associated with verifying or culling information in its reports.  It also allows NTN to produce voluminous reports to its customers, thereby creating the illusion that NTN has unearthed a wealth of information and provided its customers with something of value.

Page | 4 – CLASS ACTION ALLEGATION COMPLAINT

By being over-inclusive, NTN also avoids the risk that a customer will be displeased because the customer subsequently learns that the information NTN provided was not fully comprehensive.

18.    NTN also benefits by failing to inform consumers of their rights under the FCRA and the TCRA, and by failing to provide consumers with the information they need to understand what is being reported about them.  By failing to fully inform consumers of their rights, and by failing to provide them with the tools they need to understand their reports, NTN avoids the costs associated with consumers exercising those rights by, among other things, demanding reinvestigations and filing lawsuits.

19.    NTN's failure to comply with the FCRA and the TCRA was routine and systematic.

20.    Accordingly, Plaintiff asserts claims on behalf of proposed Classes defined below, and seeks statutory damages, punitive damages, attorneys' fees, costs and all other relief available under the FCRA and the TCRA.

## THE PARTIES

21.    Plaintiff Myers is a resident of Temple, Texas and has resided in Texas at all times since June 2013.

22.    Defendant NTN is a corporation headquartered in Lake Oswego, Oregon.  NTN maintains its primary place of business at 525 SW First St., Suite 105, Lake Oswego, OR 97034.

23.    NTN is a consumer reporting agency as defined in the FCRA and the TCRA because it regularly engages wholly or partly in the practice of assembling or evaluating consumer credit information or other information on consumers to furnish consumer reports to third parties for monetary fees.

Page | 5 – CLASS ACTION ALLEGATION COMPLAINT

24.      NTN uses interstate means and facilities of interstate commerce for the purpose of preparing and furnishing consumer reports.

25.      NTN has been engaged in the provision of consumer reports since at least 1983. According to its website, NTN has provided consumer reports on over 15 million individuals.[1]

## JURISDICTION AND VENUE

26.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question.

27.      This Court has personal jurisdiction over Defendant because NTN is headquartered in this District and conducts substantial business in this District.

28.      Venue is proper pursuant to 28 U.S.C. § 1392(b)(2) because a substantial part of the events giving rise to this action occurred in this District; and 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this District.

## STATUTORY BACKGROUND

29.      Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.  Despite the structure put in place by the FCRA, serious problems persist: by some measures, there are material errors in twenty-six percent of consumers' reports.[2]

---

[1] See http://www.ntnonline.com/, last accessed Feb. 11, 2014.

[2]   U.S. Federal Trade Commission, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003* (December 2012), available at www.ftc.gov/os/2013/02/130211factareport.pdf, last accessed February 11, 2014.

Page | 6 – CLASS ACTION ALLEGATION COMPLAINT

30.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

31.    Congress was particularly concerned about inaccuracies in consumer reports. Accordingly, Congress required consumer reporting agencies to follow "reasonable procedures to ensure maximum possible accuracy" in consumer reports.  15 U.S.C. § 1681e(b).  In this Complaint, this requirement will be referred to as the "maximum possible accuracy requirement."

32.    In addition, and in further service of the goal of maximum possible accuracy, both Congress and the Texas legislature require that consumer reporting agencies disclose consumers' full files upon request.  *See* 15 U.S.C. § 1681g and Tex. Bus. & Com. Code § 20.03.

33.    Congress and the Texas legislature require that specific pieces of information concerning consumers' rights and the contents of reports be provided along with these disclosures.  The statutory provisions which provide consumers with the right to receive certain legal disclosures along with their consumer files are 15 U.S.C. § 1681g(c)(2)(A) (requiring consumers to be provided with a Summary of Rights prepared by the CFPB) and Tex. Bus. & Com. Code §§ 20.03(a)(2) and 20.03(b) (requiring "clear" "accurate" and "understandable"… "instructions describing how information is presented on the consumer reporting agency's written disclosure of the consumer file") and § 20.03(d) (requiring seven other discrete pieces of information pertaining to the consumer's rights to be provided along with the disclosures).  In this Complaint, the legal requirements specifying the disclosures which must be provided to a

Page | 7 – CLASS ACTION ALLEGATION COMPLAINT

consumer in connection with a response to a consumer's request for their file will be referred to as the "disclosure of legal rights requirements."

34.     As set forth below, NTN systematically violated the maximum possible accuracy requirement and the disclosure of legal rights requirements by furnishing consumer reports that contained inaccurate, misleading and outdated information, and by failing to provide consumers with the full required disclosures of their legal rights.

## ALLEGATIONS RELATING TO PLAINTIFF MYERS

35.     On or about June 26, 2013, NTN provided the consumer report attached hereto as Exhibit 3 ("Myers Consumer Report" or "Report") to Plaintiff's then-employer, Ivanhoe Duplexes.

## Inaccurate Reporting

36.     The Myers Consumer Report is inaccurate for numerous reasons.

37.     The Report contains inaccurate information regarding eviction proceedings.

38.     The Report contains information about two eviction filings which pertain to individuals named Stephen L. Myers and Stephen Myers.   Neither of these individuals are Plaintiff, and Plaintiff never lived at the addresses reflected as the addresses from which the evictions presumably occurred.

39.     The Report indicates that the "Name Screened" in the section of the Report that pertains to eviction proceedings was not the Plaintiff's name, Stephanie Myers, but rather "Myers, Step*," where the asterisk indicated an open-ended search for all first names beginning with those four letters. *Ex 3 at 3.*

40.     In the section of the Report that pertains to eviction proceedings, the Report states that "All Civil Court Records are filed by NAME ONLY.  This makes it impossible to be certain

Page | 8 – CLASS ACTION ALLEGATION COMPLAINT

that the following filings involve your applicant. Please call the plaintiff listed for more information." *Id*.

41.     This foregoing statement is not true.  Indeed, based on contents of the Report itself, it is evident that the civil filings include the address of the property from which the eviction occurred.  In some instances, based on this address information, NTN provides the recipient of the report with the name and address for the landlord.

42.     However, NTN does not contact the landlord on its own to verify the identity of the individual who was the subject of the eviction filing.  Rather, NTN encourages the recipient of the report to contact the landlord to verify the identity of the evicted individual.  *Id.*

43.     Moreover, in connection with providing a report on Plaintiff, NTN reported information about Plaintiff's residence history.  Notably, none of the residences reported by NTN reflect that Plaintiff had ever lived at the addresses from which the eviction proceedings stemmed.

44.     In fact, the residence history provided by NTN indicates that Plaintiff had been consistently residing at a single address in Austin, TX, during the time period of the two eviction actions, which both related to addresses in Fort Worth, TX.

45.     NTN's procedures are such that it reports evictions based solely on partial name matches.  This stands in direct contrast to its apparent policy for reporting criminal records which requires an "Exact Name and DOB Match."  *See Ex. 3 at 6.*

46.     Despite knowing that it is reporting evictions based only on partial name matches, NTN makes no effort to verify that the identity of the individual evicted is the same as the individual who is the subject of the report.

Page | 9 – CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

47.     NTN does not cross-reference the subject's residence history with the addresses at which the evictions occurred.

48.     Nor does NTN make any effort to contact the landlords who conducted the evictions to determine whether the individual who was evicted is the same as the subject of the report.

49.     Nor does NTN procure the entire eviction file from the court to determine whether the contents of the file contain information which would confirm the match or indicate that it is improper.

50.     NTN's procedures, pursuant to which it relies solely on partial name matches and ignores information in its own reports, are patently unreasonable and are not designed to ensure maximum possible accuracy.

51.     In addition to containing inaccurate information about evictions that do not pertain to Plaintiff, the Report also reports single items of adverse information multiple times in the same report, making it appear as though there is more adverse information than actually exists.

52.     Specifically, the Statewide (instant) Criminal Search portion of the report includes eight separate notations of Myers being involved in an "offense."  Each "offense" is presented as though it is a unique incident, with a separate space for each offense that purports to include a "case number," "cause number," "offense level," "file date," "offense date," "arrest date," "charge date," "disposition," "disposition date," "fine," "court fee," "offense county," "plea," "plea date," and "statute."

53.     In fact, Myers has been charged with four criminal offenses, not eight. Nevertheless, these four charging incidents are reflected on her report in eight separate entries.

Page | 10 – CLASS ACTION ALLEGATION COMPLAINT

The entries are not chronologically arranged, which causes the report to be confusing and misleading because it is not clear that numerous entries pertain to the same incident. It appears that the second, fifth and sixth denotations of "offense" relate to a single incident, and that the first, seventh and eighth entries relate to another single incident.

54.    In addition to not being chronological, these multiple entries are misleading and unclear about precisely which offenses they pertain to, because some entries do not contain basic information that could be used to determine that the duplicate entries in fact pertain to the same incident, such as the case number, file number, charge date, disposition, entry of a plea or other information.

55.    Moreover, these duplicative entries contain internally inconsistent information in certain categories. For example, the second, fifth and sixth entries all contain different information about the ultimate disposition of the charges, with one "offense" title having three separate dispositions listed, including "conviction," "final conviction-fine only," and "motion to revoke denied." Moreover, one of the entries indicates that there was a guilty plea, while for two others the "plea" column is blank.

56.    Similarly, Defendant's reporting of the first, seventh, and eighth entries misleadingly suggests that there were multiple charges when in fact there was only a single charge. The first and seventh entries contain inconsistent information about the outcome of the charge, with the first entry indicating Myers was "CONVICTED" by guilty plea and subject to a fine of $4,000 and a court fee of $417, the seventh entry indicating she had a "conviction-formal probation" and no fine or court fee, with no indication of a guilty plea, and the eighth entry containing no information about the disposition whatsoever, but indicating she had no fine and no court fee.

Page | 11 – CLASS ACTION ALLEGATION COMPLAINT

57.     NTN's procedures with respect to the reporting of criminal convictions are unreasonable and not designed to ensure maximum possible accuracy because, among other reasons, NTN:

    a.   Failed to reasonably screen its results to ensure that each charge was only reported once.  NTN failed to remove duplicative entries, even when some of those entries contained some overlapping fields (such as the same offense and arrest date).

    b.   Failed to present the information reported in a chronological or other intelligible order, which might make it possible for a recipient to easily discern duplicate entries.

    c.   Failed to obtain copies of the actual criminal records at issue from the courts of record, which would have made manifestly clear how many charges the subject of each report faced, and how many of the reported charges were in fact duplicates.

    d.   Failed to ensure that each entry on its criminal history reports contained information in every field, which makes the identification of duplicate information extremely difficult.  For example, if the "case number" field had been filled in for every entry on Plaintiff's report, discerning duplicates would have been simple.  However, NTN chose to leave that field blank in many entries.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

**Inclusion of Outdated Information**

58.     In addition to reporting criminal information in a misleading fashion, the Report also includes outdated information.  Specifically, the third and fourth "offenses" reported in the Statewide (instant) Criminal Search both indicate that the charges were dismissed, and stemmed from incidents with offense dates which predate the report by more than seven years.

59.     The Report indicates that the third charge stemmed from an arrest on August 29, 2005 with a filing on October 20, 2005 and a dismissal on July 31, 2006.  The dismissal is within the allowable seven year reporting period under Texas law (which measures the reporting period from the date of disposition, *see* Tex. Bus. & Com. Code § 20.05(4)) but outside the reporting period for federal law, which prohibits the reporting of records of arrests based on "date of entry."  *See* 15 U.S.C. § 1681c(a)(2).  Accordingly, NTN was prohibited from reporting this information under the FCRA.

60.     The Report indicates that the fourth charge stemmed from an offense date of May 20, 2003, a "file date" of February 11, 2004, and resulted in a "dismissed-other" on February 10, 2005.  All of these events are outside the seven year reporting period allowed under both the TCRA and the FCRA.

**Failure to Provide Required Disclosures**

61.     Prior to November 25, 2013, Plaintiff requested her full consumer file from NTN.  On November 25, 2013, NTN acknowledged her request and sent her the documents attached hereto as Exhibit 4.

62.     NTN's response failed to include any of the following documents:

        a.   a copy of the summary of rights that it is required to be provided by the
             FCRA, 15 U.S.C. § 1681g(c)(2)(A);

Page | 13 – CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

b.  a "set of instructions describing how information is presented on the consumer reporting agency's written disclosure of the consumer file," as required by Tex. Bus. & Com. Code § 20.03(a)(2);

c.  a written statement that explains in clear and simple language the consumer's rights under the TCRA and which includes:

(1) the process for receiving a consumer report or consumer file;

(2) the process for requesting or removing a security alert or freeze;

(3) the toll-free telephone number for requesting a security alert;

(4) applicable fees;

(5) dispute procedures;

(6) the process for correcting a consumer file or report; and

(7) information on a consumer's right to bring an action in court or arbitrate a dispute, as required by Tex. Bus. & Com. Code § 20.03(d).

63.    These omissions matter to Plaintiff and other consumers.  NTN's failure to provide information about the consumer's legal rights and remedies (as set forth in the requirements mentioned in Paragraph 62(a), and (c) 1-7 above deprives consumers, like Myers, of information regarding how they can most effectively correct inaccuracies in their reports.

64.    The failure to abide by the requirements of Tex. Bus. & Com. Code § 20.03(a)(2) as set forth in Paragraph 62(b) above is similarly detrimental, as the Report contains a variety of incomprehensible codes and abbreviations, including numerous abbreviations about account status on the Experian Credit Report, NCIC codes on the Statewide (instant) Criminal Search, abbreviations such as "MA" for the offense level, and the number "3" as the sole entry in the field titled "court name."

Page | 14 – CLASS ACTION ALLEGATION COMPLAINT

## CLASS ACTION ALLEGATIONS

65.    Myers asserts Count 1 on behalf of the "Mismatched Eviction Records Class," defined as follows:

> **Mismatched Eviction Records Class:**  All individuals in the United States who were the subject of a consumer report furnished by NTN which:
>
> 1) Includes eviction records for a person whose name is not an exact match to the consumer's name;
> 2) Includes an eviction record associated with an address that was not provided as a previous address for the consumer by the entity requesting the report; and
> 3) Includes an eviction record associated with an address that is not listed as an "additional address" for the subject of the report elsewhere in the report.
>
> The Mismatched Eviction Records Class consists of all persons who satisfy the three above criteria who were the subject of a consumer report furnished by NTN at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

66.    Myers asserts Count 2 on behalf of the "Duplicative Reporting Class" defined as follows:

> **Duplicative Reporting Class:**  All individuals in the United States who were the subject of a consumer report furnished by NTN which includes more than one non-identical notation regarding an "offense" where the duplicative notations regarding the "offense" refer to a single incident.  The Duplicative Reporting Class consists of all persons who satisfy this criterion who were the subject of a consumer report furnished by NTN at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

67.    Myers asserts Count 3 on behalf of the "Outdated Information Class," defined as follows:

> **Outdated Information Class:**  All individuals who were the subject of a consumer report furnished by NTN which includes an entry for an "offense" where the date of the earlier of the "arrest date," "file date," "offense date," or "charge date," antedates the date of the report by more than seven years.  The Outdated Information Class consists of all persons who satisfy this criterion and who were the subject of a consumer report furnished by NTN at any time which occurred between the date which is two years prior to the filing of the initial

Page | 15 – CLASS ACTION ALLEGATION COMPLAINT

Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

68.    Myers asserts Count 4 on behalf of the "Texas Outdated Information Class,"

defined as follows:

> **Texas Outdated Information Sub-Class:**  All individuals whose reports include an address for the subject of the report located in Texas and who were the subject of a consumer report furnished by NTN which includes an entry for an "offense" where the "disposition date" antedates the date of the report by more than seven years.  The Texas Outdated Information Sub-Class consists of all persons who satisfy this criterion and who were the subject of a consumer report furnished by NTN at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

69.    Myers asserts Count 5 on behalf of the "Federal Disclosures Class" defined as

follows:

> **Federal Disclosures Class:**  All individuals who were the subject of a consumer report furnished by NTN and to whom NTN provided a disclosure from the individual's consumer file after receiving a request from the consumer.  The Federal Disclosures Class consists of all persons who satisfy this criterion and to whom NTN made such a disclosure at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

70.    Myers asserts Count 6 on behalf of a the "Texas Disclosures Sub-Class," defined

as follows:

> **Texas Disclosures Sub-Class:**  All individuals whose reports include an address for the subject of the report located in Texas and to whom NTN provided a disclosure from the individual's consumer file after receiving a request from the consumer.  The Texas Disclosures Sub-Class consists of all persons who satisfy this criterion and to whom NTN made such a disclosure at any time which occurred between the date which is two years prior to the filing of the initial Complaint in this action and the date of final judgment in this action, or such earlier class end date as shall be established by the Court.

71.    <u>Numerosity</u>:    The Classes are so numerous that joinder of all Class members is

impracticable.  Each of the proposed classes and sub-classes consists of over 100 individuals.

Page | 16 – CLASS ACTION ALLEGATION COMPLAINT

72.    <u>Typicality</u>:    Myers' claims are typical of the Class members' claims.  NTN uses highly automated procedures to prepare consumer reports, and the flaws in its procedures which led to the violations alleged herein are systematic.

73.    <u>Adequacy</u>:    Myers will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

74.    <u>Commonality</u>:  Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

    a. Whether NTN violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy by *inter alia*,

        i. Including eviction information on individuals other than the subject of the consumer report; and
        ii. Including multiple non-identical entries pertaining to a single criminal incident;

    b. Whether NTN violated the FCRA by including information which is adverse to the consumer and antedates the report by more than seven years;

    c. Whether NTN violated the TCRA by including in its reports records of arrest, indictment, or conviction of a crime in which the date of disposition release, or parole predates the consumer report by more than seven years;

    d. Whether NTN violated the FCRA by failing to provide consumers with the required summary of rights when it made disclosures to consumers upon the consumers' requests;

    e. Whether NTN violated the TCRA by failing to provide consumers with required information in connection with its responses to consumers requests;

    f. Whether NTN's FCRA violations were willful;

    g. Whether NTN's TCRA violations were willful;

    h. Whether NTN's TCRA violations were negligent;

Page | 17 – CLASS ACTION ALLEGATION COMPLAINT

i.    The proper measure of statutory and punitive damages; and

j.    The proper form of declaratory relief.

75.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  NTN's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA and TCRA.  Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution.  Myers is unaware of any claims currently being pursued in this lawsuit which have been brought against Defendant by any Class members on an individual basis or class basis in any other court.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

76.    The names and addresses of the Class members are available from Defendant's records.

## ALLEGATIONS ESTABLISHING NTN'S CONDUCT WAS WILLFUL

77.    In addition to the allegations set forth above, Plaintiff sets forth below additional reasons why each specific violation was committed willfully:

a.    The FCRA was enacted in 1970; Defendant has had over four decades to become compliant; the TCRA has been in place for over a decade;

Page | 18 – CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

b.  Defendant is a large corporation with access to legal advice through its own general counsel's office and outside counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

c.  Defendant is a consumer reporting agency, and its primary business is the provision of consumer reports, which are strictly regulated by the FRCA and TCRA. Defendant is familiar with these statutes, and what it must do to comply with them; and

d.  Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the FCRA and the TCRA.

## COUNT I
### NTN Reports Inaccurate Eviction Information
### 15 U.S.C. § 1681e(b)
### *Asserted on Behalf of the Mismatched Eviction Records Class*

78.  NTN has violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy of eviction-related information. *See* 15 U.S.C. § 1681e(b). This failure has led to NTN falsely reporting that members of the Mismatched Eviction Records Class were defendants in evictions actions.

79.  The foregoing violations were willful. NTN acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other Mismatched Eviction Records Class members.

80.  NTN's willful conduct is reflected by, inter alia, the reasons listed in ¶ 77 above, as well as the following:

Page | 19 – CLASS ACTION ALLEGATION COMPLAINT

a.  The statutory text regarding the need for reasonable procedures to ensure maximum possible accuracy is clear and free from ambiguity.

b.  NTN was aware that in doing a search for a partial name match, it was doing an overbroad search which would misreport eviction information.

c.  NTN was aware that it could contact the landlords who initiated the reported eviction suits to inquire whether the defendant in that suit was the same person who was the subject of the report, but it chose not to do so.

d.  NTN failed to cross-reference its residence history information with its eviction information for internal inconsistencies, including reporting that the subject of a report was living at one location at the same time they were allegedly being evicted from another location.

e.  NTN did not engage in any in-person human review or any computer based algorithmic review of the records it reported for Plaintiff which was aimed at eliminating reports of evictions associated with someone other than the subject of the consumer report.   NTN could have easily established a computer based algorithm to filter the database from which it produces consumer reports to ensure that evictions which resulted from addresses that could not be verified for the subject of the report were either not reported or were verified through additional investigation prior to being reported.  NTN is well aware of the ability to use algorithms to set reporting parameters, as is demonstrated by its inclusion of the "partial name match" algorithm it used to report evictions, and its use of an "exact name and DOB match" algorithm to report criminal offenses.  *See Exhibit 3*.

Page | 20 – CLASS ACTION ALLEGATION COMPLAINT

81.    Plaintiff and the Mismatched Eviction Records Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

82.    Plaintiff and the Mismatched Eviction Records Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

83.    Plaintiff and the Mismatched Eviction Records Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT II**
**NTN Reports Duplicate Criminal Convictions**
**15 U.S.C. § 1681e(b)**
*Asserted on Behalf of the Duplicative Reporting Class*

84.    NTN has violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of criminal record information. *See* 15 U.S.C. § 1681e(b). This failure has led to NTN reporting criminal charges against members of the Duplicative Reporting Class multiple times in the same report.

85.    The foregoing violations were willful. NTN acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other Duplicative Reporting Class members.

86.    NTN's willful conduct is reflected by, *inter alia*, the reasons listed in ¶ 77 above, as well as the following:

a.    The statutory text regarding the need for reasonable procedures to ensure maximum possible accuracy is clear and free from ambiguity. It is well established that duplicative reporting of single criminal incidents violates the FCRA. *See Exhibit 1; Smith v. HireRight Solutions*, 711 F. Supp. 2d 426

Page | 21 – CLASS ACTION ALLEGATION COMPLAINT

(E.D. Pa. 2010) (upholding claim for willful duplicate reporting in violation of 15 U.S.C. § 1681e(b)).

b.  NTN was aware or should have been aware that criminal record entries with substantial overlap (such as listing the same charge and arrest date) were likely duplicative.

c.  NTN did not engage in any in-person human review or any computer based algorithmic review of the criminal records it reported for Plaintiff which was aimed at eliminating duplicate reports of a single incident.  NTN could have easily established a computer based algorithm to filter the database from which it produces consumer reports to ensure that criminal offenses with similar offense dates, charges, or disposition dates were reviewed and aggregated prior to being reported.  NTN is well aware of the ability to use algorithms to set reporting parameters, as is demonstrated by its inclusion of the "partial name match" algorithm it used to report evictions, and its use of an "exact name and DOB match" algorithm to report criminal offenses.  *See Exhibit 3.*

d.   By requesting copies of the actual criminal records at issue, NTN could have determined which entries were duplicative, but it failed to do so.

87.    Plaintiff and the Duplicative Reporting Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

88.    Plaintiff and the Duplicative Reporting Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

Page | 22 – CLASS ACTION ALLEGATION COMPLAINT

89.    Plaintiff and the Duplicative Reporting Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

<u>COUNT III</u>
**NTN Reports Outdated Information**
**15 U.S.C. § 1681c(a)**
*Asserted on Behalf of the Outdated Information Class*

90.    NTN has violated the FCRA by reporting records of arrests and criminal charges that antedate the report by more than seven years.  *See* 15 U.S.C. § 1681c(a)(2).

91.    The foregoing violations were willful.  NTN acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other Outdated Information Class members.

92.    NTN's willful conduct is reflected by, *inter alia*, the reasons listed in ¶ 77 above, as well as the following:

a.    The statutory text regarding the reporting of outdated information is clear and free from ambiguity.  *See* 15 U.S.C. §§ 1681c(a)(2).  The rule itself is relatively simple and easy to apply, and yet NTN failed to follow it.

b.    Case law on this topic is also clear – reporting dismissed charges after seven years is a violation of the FCRA.  *See, e.g. Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239 (E.D.N.Y. 2012); *Serrano v. Sterling Testing Sys., Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008).

c.    NTN knew that its reports contained dismissed criminal charges older than seven years because the inclusion of that information was obvious from the face of the reports.

Page | 23 – CLASS ACTION ALLEGATION COMPLAINT

    d.  Nothing in NTN's full file disclosure to Plaintiff indicates that NTN undertook any quality control measures whatsoever to preclude information about old dismissed charges from being included in its reports.

    e.  NTN could have easily established and used a computer based algorithm to filter the database from which it produces consumer reports to ensure that charges with dispositions such as "dismiss!" or "nolle pross" or "not guilty" were excluded if they were older than seven years, but failed to employ any such algorithm to filter its reports. NTN is well aware of the ability to use algorithms to set reporting parameters, as is demonstrated by its inclusion of the "partial name match" algorithm it used to report evictions, and its use of an "exact name and DOB match" algorithm to report criminal offenses. *See Exhibit 3.*

93.    Plaintiff and the other Outdated Information Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

94.    Plaintiff and the other Outdated Information Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

95.    Plaintiff and the other Outdated Information Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

Page | 24 – CLASS ACTION ALLEGATION COMPLAINT

## COUNT IV
### NTN Reports Outdated Information On Texas Residents
### Tex. Bus. & Com. Code § 20.05(4)
#### *Asserted on Behalf of the Texas Outdated Information Class*

96.    NTN has violated the TCRA by reporting records of arrest, indictment, or conviction of a crime in which the date of disposition, release, or parole predates the consumer report by more than seven years. *See* Tex. Bus. & Com. Code § 20.05(4).

97.    The foregoing violations were willful. NTN acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other Texas Outdated Information Class members.

98.    NTN's willful conduct is reflected by, *inter alia*, the reasons listed in ¶ 77 above, as well as the following:

    a.    The statutory text regarding the reporting of outdated information is clear and free from ambiguity. *See* Tex. Bus. & Com. Code § 20.05(4). The rule itself is simple and easy to apply, and yet NTN failed to follow it.

    b.    Nothing in NTN's full file disclosure to Plaintiff indicates that NTN undertook any quality control measures whatsoever to preclude information about old dismissed charges from being included in its reports.

    c.    NTN could have easily established and used a computer based algorithm to filter the database from which it produces consumer reports to ensure that charges with dispositions such as "dismiss!" or "nolle pross" or "not guilty" were excluded if they were older than seven years, but failed to employ any such algorithm to filter its reports. NTN is well aware of the ability to use algorithms to set reporting parameters, as is demonstrated by its inclusion of the "partial name match" algorithm it used to report evictions, and its use of

Page | 25 – CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

an "exact name and DOB match" algorithm to report criminal offenses. *See Exhibit 3.*

99.   Plaintiff and the other Texas Outdated Information Class members are entitled to statutory damages $1,000 for each and every one of these violations, pursuant to Tex. Bus. & Com. Code § 20.09.

100.   In the alternative, NTN's violations were negligent, for all the reasons listed in ¶ 98 above, entitling Plaintiff and the Texas Outdated Information Class to $500 for each and every one of these violations pursuant to Tex. Bus. & Com. Code § 20.09.

101.   Plaintiff and the other Texas Outdated Information Class members are further entitled to recover their costs and attorneys' fees, pursuant to Tex. Bus. & Com. Code § 20.09.

## COUNT V
### NTN Failed To Provide Federally Mandated Disclosures
### 15 U.S.C. § 1681g(c)(2)(a)
### *Asserted on Behalf of the Federal Disclosure Class*

102.   NTN has violated the FCRA by failing to provide consumers who receive a copy of their reports with a summary of their rights under the FCRA. *See* 15 U.S.C. § 1681g(c)(2)(a).

103.   The foregoing violations were willful.   NTN acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other Federal Disclosure Class members.

104.   NTN's willful conduct is reflected by, *inter alia*, the reasons listed in ¶ 77 above, as well as the following:

    a.   The statutory text regarding the provision of a summary of rights is clear and free from ambiguity.   15 U.S.C. § 1681g(c)(2)(a).

    b.   The rule created by 15 U.S.C. § 1681g(c)(2)(a) is exceedingly simple and easy to follow.   However, NTN simply failed to comply.

Page | 26 – CLASS ACTION ALLEGATION COMPLAINT

c.  NTN's response to Myers is a form response letter, generated automatically, and included no summary of rights.

105.    Plaintiff and the other Federal Disclosure Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

106.    Plaintiff and the other Federal Disclosure Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

107.    Plaintiff and the other Federal Disclosure Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

<u>**COUNT VI**</u>
**NTN Failed To Provide Texas-Mandated Disclosures**
**Tex. Bus. & Com. Code § 20.03(d)**
*Asserted on Behalf of the Texas Disclosures Subclass*

108.    NTN has violated the TCRA by failing to provide consumers who receive a copy of their reports with a written statement that explains in clear and simple language the consumer's rights under the TCRA and which includes:

(1) the process for receiving a consumer report or consumer file;

(2) the process for requesting or removing a security alert or freeze;

(3) the toll-free telephone number for requesting a security alert;

(4) applicable fees;

(5) dispute procedures;

(6) the process for correcting a consumer file or report; and

(7) information on a consumer's right to bring an action in court or arbitrate a dispute, as required by Tex. Bus. & Com. Code § 20.03(d).

Page | 27 – CLASS ACTION ALLEGATION COMPLAINT

109.    The foregoing violations were willful.  NTN acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the other Texas Disclosures Subclass members.

110.    NTN's willful conduct is reflected by, *inter alia*, the reasons listed in ¶ 77 above, as well as the following:

      a.    The statutory text regarding the required disclosures is clear and free from ambiguity.  Tex. Bus. & Com. Code § 20.03(d).

      b.    The rule created by Tex. Bus. & Com. Code § 20.03(d) is exceedingly simple and easy to follow.  However, NTN simply failed to comply.

      c.    NTN's response to Myers is a form response letter, generated automatically, and included none of the information required under Texas law.

111.    Plaintiff and the other Texas Disclosures Subclass members are entitled to statutory damages $1,000 for each and every one of these violations, pursuant to Tex. Bus. & Com. Code § 20.09.

112.    In the alternative, NTN's violations were negligent, for all the reasons listed in ¶ 110 above, entitling Plaintiff and the Texas Disclosures Subclass to $500 for each and every one of these violations pursuant to Tex. Bus. & Com. Code § 20.09.

113.    Plaintiff and the other Texas Disclosures Subclass members are further entitled to recover their costs and attorneys' fees, pursuant to Tex. Bus. & Com. Code § 20.09.

## PRAYER FOR RELIEF

114.    WHEREFORE, Myers, on behalf of herself and the Classes, prays for relief as follows:

      A.    Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

Page | 28 – CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

B.     Designating Myers as class representative and designating undersigned counsel as counsel for the Classes;

C.     Issuing proper notice to the Classes at Defendant's expense;

D.     Declaring that Defendant committed multiple, separate violations of the FCRA and TCRA;

E.     Declaring that Defendant acted willfully in deliberate or reckless disregard of Myers's rights and its obligations under the FCRA and TCRA;

F.     Awarding statutory damages and punitive damages as provided by the FCRA and TCRA;

G.     Awarding reasonable attorneys' fees and costs as provided by the FCRA and TCRA; and

H.     Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

115.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the classes demand a trial by jury.

DATED this 26th day of February, 2014.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: /s/ Steve D. Larson
       **Steve D. Larson,** OSB No. 863540
       **Nadine A. Gartner**, OSB No. 103864

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:      (503) 227-1600
Facsimile:      (503) 227-6840
Email:          slarson@stollberne.com
                ngartner@stollberne.com

Page | 29 – CLASS ACTION ALLEGATION COMPLAINT

and

E. Michelle Drake (*to be admitted Pro Hac Vice*)
Daniel C. Bryden (*to be admitted Pro Hac Vice*)
NICHOLS KASTER, PLLP
4600 IDS Center, 80 S 8th Street
Minneapolis, Minnesota 55402
Telephone:      (612) 256-3200
Facsimile:      (612) 338-4878
Email:          drake@nka.com
                dbryden@nka.com

**Attorneys for Plaintiff**

Page | 30 – CLASS ACTION ALLEGATION COMPLAINT